1  E. JOSEPH CONNAUGHTON (SBN 166765)
   joe.connaughton@quarles.com
2  CHRISTINA REA SNIDER (SBN 269107)
   Christina.Snider@quarles.com
3  **QUARLES & BRADY LLP**
   101 West Broadway, Ninth Floor
4  San Diego, California 92101-8285
   Telephone: 619-237-5200
5  Facsimile: 619-615-0700

6  Attorneys for Defendants NATIONAL STEEL
   AND SHIPBUILDING COMPANY and
7  NASSCO HOLDINGS INCORPORATED

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL EYONG, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL STEEL AND SHIPBUILDING COMPANY, a Nevada corporation; NASSCO HOLDINGS INCORPORATED, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. **'24CV0877 L   MMP**<br><br>**DEFENDANTS NATIONAL STEEL AND SHIPBUILDING COMPANY AND NASSCO HOLDINGS INCORPORATED'S NOTICE OF REMOVAL** |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, PLAINTIFF EMMANUEL EYONG, AND HIS ATTORNEYS OF RECORD:

Pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446, Defendants National Steel and Shipbuilding Company and NASSCO Holdings Incorporated (jointly NASSCO), hereby give notice that the civil action currently pending in the Superior Court for the State of California, for the County of San Diego, identified as *Emmanuel Eyong v. National Steel and Shipbuilding Company, et al.* assigned Case Number 37-2024-00017371-CU-OE-CTL, is removed to this Court without waiving

Case No._____

any rights to which NASSCO may be entitled, and say:

1. Emmanuel Eyong filed the Complaint attached as **Exhibit A** in the San Diego Superior Court, on April 12, 2024. (Ex. A ["Compl."].) In the Complaint, Plaintiff alleges the following claims on an individual and class action basis: (1) Unpaid Overtime; (2) Unpaid Minimum Wages; (3) Failure to Provide Meal Periods; (4) Failure to Authorize and Permit Rest Periods (5) Non-Compliant Wage Statements and Failure to Maintain Payroll Records; (6) Wages Not Timely Paid Upon Termination; (7) Failure to Timely Pay Wages During Employment; (8) Unreimbursed Business Expenses; (9) Unlawful Business Practices; and (10) Unfair Business Practices.

2. Plaintiff served National Steel and Shipbuilding Company with the Complaint on April 17, 2024, and NASSCO Holdings Incorporated on May 1, 2024. Attached as **Exhibit B** are the copies of the summons, complaint, civil case cover sheet, alternative dispute resolution information, notice of case assignment and civil case management conferences, and all other documents which Plaintiff served on NASSCO. Pursuant to 28 U.S.C. § 1446(b), NASSCO files this Notice of Removal within thirty days of Plaintiff's service of the Complaint on National Steel and Shipbuilding Company.

3. Pursuant to 28 U.S.C. § 1446(a), copies of all documents, including all orders, pleadings, and process which have been served upon NASSCO, are attached as **Exhibits A and B**.

4. Copies of other orders, pleadings, and documents which Plaintiff has not served upon NASSCO, but which NASSCO downloaded from the state court's online Register of Actions, are attached as **Exhibit C**.

5. No defendants other than Defendant National Steel and Shipbuilding Company and Defendant NASSCO Holdings Incorporated are named in the Complaint.

///

6. NASSCO will, upon filing this notice of removal, give notice of the removal to Plaintiff and the Superior Court.

7. Venue is proper because the state court action was pending in this district. 28 U.S.C. sections 1441(a) and 1391(b).

8. This Court has original jurisdiction over Plaintiff's Complaint pursuant to 28 U.S.C. § 1331, because the complaint allegations arose in part on a federal enclave over which the federal government has exclusive jurisdiction. This Court also has removal jurisdiction under 28 U.S.C. § 1442(a)(1), because a defendant can remove a case against an officer of the United States, or against any officer's agent.

### This Court has Original Federal Enclave Jurisdiction

9. This Court has original jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A defendant may remove any civil action to this Court where it has original jurisdiction. *Id*. at § 1441(a).

10. Congress has exclusive jurisdiction to legislate over federal enclaves, which are areas "purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const. art. I, § 8, cl. 17. Military bases, such as the Naval Base San Diego ("Naval Base"), are federal enclaves.

11. When the federal government purchases state land with the consent of the state legislature, "any law existing [on that land] must derive its authority and force from the United States and is for that reason federal law." *Cnty. of San Mateo v. Chevron Corp*., 32 F. 4th 733, 749 (9th Cir. 2022), *cert. denied sub nom. Chevron Corp. v. San Mateo Cnty., California*, 143 S. Ct. 1797, 215 L. Ed. 2d 678 (2023). Accordingly, any conduct on a federal enclave is governed by federal law, and this Court has the "power to adjudicate controversies arising" on federal enclaves. *Id*. "Claims due to acts that took place on a federal enclave are under exclusive federal law jurisdiction." *Jamil v. Workforce Res., LLC*, No. 18-CV-27-JLS (NLS), 2018

WL 2298119, at *2 (S.D. Cal. May 21, 2018) (citations omitted).

12. The "plaintiff's place of employment" determines whether the federal enclave doctrine applies. *See Abikar v. Bristol Bay Native Corp.*, 300 F. Supp. 3d 1092, 1103 (S.D. Cal. 2018); *Lockhart v. MVM, Inc.*, 175 Cal. App. 4th 1452, 1459, (2009). The only relevant inquiry is whether "the pertinent events" took place on the federal enclave. *Jamil*, 2018 WL 2298119, at *2; *Abikar*, 300 F. Supp. at 1103.

13. NASSCO designs, builds, and repairs Navy and commercial ships. NASSCO serves as a principal repair facility for the U.S. Navy's Pacific Fleet ships, and it is a major provider of repair services for the U.S. Navy. (Declaration of Kevin D. McCollough, ¶ 4.) NASSCO often does this work on the Navy Base. Throughout the class period as defined by Plaintiff, NASSCO had a substantial number of projects at the Navy Base, where a substantial number of putative class members worked. (*See id.* ¶ 5.[1])

14. The Naval Base San Diego became a federal enclave on February 23, 1922. *PRIDE Industries v. VersAbility Resources, Inc.*, 670 F. Supp. 3d 323, 334 (E.D. Va 2023) ("Naval Base San Diego became a federal enclave on February 23, 1922"); *Jimenez v. CRC Property Management West Inc.*, No. 319CV01547JAHMSB, 2021 WL 4312622, at *4 (S.D. Cal., Sept. 21, 2021 (same); *Carvajal v. Pride Industries, Inc.*, No. 10CV2319-GPC MDD, 2013 WL 1728273, at *5 (S.D. Cal., Apr. 22, 2013) (same)).

15. Plaintiff alleges ten claims on behalf of a putative class, defined as: "All persons who worked for [NASSCO] as non-exempt, hourly paid employees, within four years prior to the filing of the initial complaint until the date of trial ('Class')." (Compl. ¶ 36.) Plaintiff alleges that NASSCO implemented policies

---

[1] Mr. McCollough's declaration states his knowledge dating back to April 2021, but NASSCO's work on the Navy Base dates back to well before the beginning of the class period.

"company-wide, regardless of their employees' assigned locations or positions." (*Id.* ¶ 19.) Plaintiff alleges that he and class members were discouraged from recording their hours worked, and that they were required to do work outside of their shifts because of the heavy workload. (*Id.* ¶¶ 52, 60, 68.) He alleges they were required to remain "on the premises" during their rest periods, and that they could not complete personal errands. (*Id.* ¶ 80.) He also alleges he and other class members were required to carry and use their cellular phones at all times, and were required to respond to requests on their mobile devices at all times, including during meal periods. (*Id.* ¶ 53.) He alleges that NASSCO rounded his and other class members' clock-in and clock-out times. (*Id.* ¶¶ 49, 60.)

16. Because NASSCO had a substantial number of projects at the Navy Base during the putative class period, and because a substantial number of putative class members worked there, NASSCO asserts on information and belief that the "pertinent events" that form the basis of the complaint occurred on a federal enclave.

## This Court Also has Federal Officer Removal Jurisdiction

17. Federal officers and their agents may remove a civil action based on "acts performed under color of their federal office if they assert a colorable federal defense." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006); 28 U.S.C. § 1442(a)(1). A defendant may remove a case under this statute if the defendant demonstrates: (1) they are a "person" within the meaning of the statute, (2) there is a causal nexus between the federal officer's conduct and the plaintiff's claims, and (3) the defendant has a colorable federal defense. *Id*. To establish a causal nexus, the defendant must show: (1) they were "acting under" a federal officer in performing some "act under color of federal office," and (2) that such action is causally connected with the plaintiff's claims against them. *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).

18. Here, NASSCO may remove the action pursuant to the federal officer removal statute. First, NASSCO is a person within the meaning of the statute. *Davidson v. Arch Chemicals Specialty Products, Inc.*, 347 F. Supp. 2d 938, 941 (D. Or. 2004) (corporations may be persons for purposes of this statute).

19. Second, there is a causal nexus between the putative class members' claims and the Navy's control over NASSCO's work, because NASSCO was acting pursuant to the Navy's control while performing work on Naval ships. NASSCO performed work on Navy ships during the class period pursuant to contracts with the Navy. *Cnty. of San Mateo*, 32 F. 4th at 755-756 (government contractors who effectively serve as government's agents and perform the contract to government specifications are "acting under" federal officers). Indeed, NASSCO's security measures – including the measures Plaintiff implemented in his security position, are also governed by Navy – as well as Department of Defense and Coast Guard regulations and requirements. (*See* McCollough Decl., ¶¶ 6-9.)

20. Third, NASSCO has several colorable federal defenses.

21. NASSCO has a colorable federal defense that Plaintiff's state law claims are barred by the federal enclave doctrine. Only state law claims that existed at the time the federal government acquired the federal enclave survive the acquisition. *Parker Drilling Management Services, Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019).

22. Here, Plaintiff's claims did not exist at the time the federal government acquired the Naval Base. The Legislature enacted all the statutes Plaintiff cites on a later date than February 23, 1922: Labor Code sections 510 and 1198 in 1937; Labor Code section 1182.12 in 2006; Labor Code section 1194 in 1937; Labor Code section 1197 in 1937; L119abor Code section 1197.1 in 1983; Labor Code section 1198 in 1937; Labor Code section 226.7 in 2000; Labor Code section 512 in 1999; Labor Code section 516 in 1999; Labor Code section 226 in 1979; Labor Code section 1174 in 1937; Labor Code section 201 in 1937; Labor Code section 202 in

1937; Labor Code section 204 in 1937; Labor Code section 2802 in 1937; and Business & Professions Code section 17200 in 1977.

23.   Thus, Plaintiff's state law claims did not exist until after the Naval Base became a federal enclave. They will be barred by the federal enclave doctrine.

24.   Second, NASSCO has a colorable federal defense that Plaintiff's claims – and some of the putative class members' claims – are preempted by federal law. Plaintiff alleges he engaged in various facility security duties at NASSCO, including processing visitor request forms, screening visitors, patrolling the premises, and monitoring surveillance cameras. (Compl., ¶ 4.) He alleges, among other things, that he and other class members were unable to take breaks because their workload was demanding, and that he and other class members were on call during breaks and thus needed to use their mobile phones during breaks. (*Id.* ¶¶ 52, 53, 60, 68.) He also alleges he and other class members needed to complete mandatory training. (*Id.* ¶ 51, 106.)

25.   But NASSCO's security processes and procedures, including enhanced security measures, are based on detailed provisions in their defense contracts with the Navy. (McCollough Decl., ¶ 6.) They are also governed by a Department of Defense Antiterrorism Plan, and the Department's Force Protection Conditions. The Department's Plan requires security measures which increase depending on national security threat levels. (*Id.* ¶ 7.) NASSCO is also subject to Department of Defense security regulations governing, among other things, access to classified information. (*Id.* ¶ 8.) *See* 32 C.F.R. § 117.1. NASSCO is also subject to Coast Guard regulations and enforcement regulating the water in which Navy vessels are docked. (*Id.* ¶ 9.) *See, e.g.,* 33 C.F.R. § 165.1. These regulations were enacted "to ensure the safety or security of any vessel of the Armed Forces in those waters." 14 U.S.C. § 527(a).

26.   The underlying purpose of these provisions is national security – *i.e.,* to protect the Naval ships and armed forces who will later board the ships. (*See id.* ¶¶

6–9.) Interpretation of these increased security provisions thus implicates a "uniquely federal interest." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159–60 (9th Cir. 2016). When a "uniquely federal interest" is implicated, federal law preempts state law completely. *Id.* ("If, under such contracts, the liability of defense contractors to third parties were to vary on a state-by-state basis, the resultant uncertainty would doubtless raise "the cost of national security.'"); *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1160 (9th Cir. 2016); *see also New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 955 (9th Cir. 1996) (contract dispute arose under federal law because "the construction of subcontracts, let under prime contracts connected with the national security, should be regulated by a uniform federal law") (quoting *Am. Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640, 644 (9th Cir. 1961).) For similar reasons, maritime regulations such as Coast Guard regulations, which are devised to secure maritime vessels, generally preempt state law. *United States v. Locke*, 529 U.S. 89, 115–16 (2000).

27. Third, NASSCO also has a colorable federal defense that some or all of Plaintiff's state law claims are barred by derivative sovereign immunity. The United States, as sovereign, is immune from suit, unless it explicitly consents to be sued. *Yearsley v. W.A. Ross Construction Co.* 309 U.S. 18, 20–21 (1940). When the sovereign employs a private actor to do its bidding, the benefits of sovereign immunity extend to that private actor. *Id.* The private actor can only be liable if the "ground of liability [was] either that he exceeded his authority or that it was not validly conferred," *id.*, or that "the contractor unquestionably disobeyed government instructions." *Clover v. Camp Pendleton & Quantico Hous. LLC*, 525 F. Supp. 3d 1140, 1143 (S.D. Cal. 2021). Here, Plaintiff's allegations and the putative class members' allegations appear to arise at least in part from security work governed by Navy contract requirements, and the federal regulations cited above. Plaintiff does not allege NASSCO disobeyed government instructions in that regard.

## Conclusion

For the foregoing reasons, NASSCO hereby removes this case to the United States District Court for the Southern District of California.

Dated: May 17, 2024    QUARLES & BRADY LLP

By: /s/ *Christina Rea Snider*
E. JOSEPH CONNAUGHTON
CHRISTINA REA SNIDER
Attorneys for Defendants NATIONAL STEEL AND SHIPBUILDING COMPANY and NASSCO HOLDINGS INCORPORATED